# Exhibit A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA

| | |
|---|---|
| DAVID BARTON THACKER, and unmarried man,<br><br>Plaintiff,<br><br>vs.<br><br>THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-24, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-24, a national association, and BAYVIEW LOAN SERVICING, LLC.,<br><br>Defendants. | CASE: 3:18-cv-05562 RJB<br><br>RESPONSE/OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

PLAINTIFF DAVID BARTON THACKER, by and through the undersigned counsel, files this Response and Objection to Motion for Summary Judgment brought by defendants, Bank of New York Mellon and Bayview Loan Servicing LLC.

**<u>INTRODUCTION</u>**

The defendants seek to inflame this Court by characterizing this litigation as David Thacker's "attempt to get a free house." Yet, the district courts have consistently held that where the rules of law are to be applied correctly to bar the enforcement of unsupported liens or stale claims, the result is just and fair. *Skibbe v. U.S. Bank Trust, N.A.,* 2017 U.S. Dist. LEXIS 88757 (N.D. Ill. Jun. 9, 2017) (Court denied bank's motion for reconsideration, "giving no weight to the argument that the Skibbes were unfairly getting a 'free house.'"); *In re Sutter*, 665

F.3d 722 (2012) (Court held no mortgage, equitable or otherwise, exists on the debtor's property under the unclean hands doctrine); *Johnson v. GMAC,* 162 S.W.3d 110, 122 (Court of Appeals of Missouri, 2005) (where the court orders release of a security interest because equity demands it, any concerns over the debtor receiving a windfall or a free house are misplaced).

## UNDISPUTED FACTS

Countrywide Bank served a Notice of Intent to Accelerate the subject loan on October 3, 2008 and accelerated the loan because the Plaintiff did not cure the default (Thacker Decl., ¶ 4 Ex C).

Countrywide Home Loans Bank served a Notice of Intent to Accelerate the subject loan on October 17, 2008 and accelerated the loan because the Plaintiff did not cure the default (Thacker Decl., ¶ 5 Ex D).

Plaintiff filed for Chapter 7 bankruptcy and listed the subject mortgage debt. Plaintiff did not reaffirm the debt and the United States Bankruptcy Court for the Western District of Washington discharged the Plaintiff's personal liability for the Note on November 11, 2010 (Thacker Decl., ¶ 13 Ex K). Plaintiff notified the lender/note holder/loan servicer of the bankruptcy filing. See Defendants' Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment, Dkt 18, Exhibits A and B.

In 2013, Bayview Loan Servicing served another Notice of Intent to Accelerate the subject loan dated February 6, 2013 (Thacker Decl., ¶ 6 Ex E).

Bayview Loan Servicing served correspondence on the Plaintiff dated October 14, 2015 informing him that if he did not cure the default or enter into a foreclosure alternative program within fourteen (14) days, "the lender intends to exercise its rights to accelerate the mortgage debt." (Thacker Decl., ¶ 7 Ex F).

The defendants caused to be recorded several of Notices of Trustee's Sale (NOTS) on January 28, 2009 (Thacker Decl. ¶ 8 Ex G), March 31, 2010 (Thacker Decl. ¶ 9 Ex H), May 25, 2011 (Thacker Decl. ¶ 10 Ex I) that were issued by an unlawful foreclosure trustee, Recontrust Company. A NOTS was also recorded March 21, 2018 in Pierce County Auditor's office under recording number 201803210248 (Complaint Dkt 1 Ex G).

After the bankruptcy discharge, defendant Bayview issued numerous periodic statements on the loan, including after the trial payments, that make no mention of deacceleration and which consistently reflected a due date of September or October 2008 (Thacker Decl. ¶ 15 Ex

L), (Thacker Decl. ¶16 Ex M), (Thacker Decl. ¶17 Ex N), (Thacker Decl. ¶ 18 Ex O), (Thacker Decl. ¶ 19 Ex P), (Thacker Decl. ¶ 20 Ex Q), (Thacker Decl. ¶ 21 Ex R), (Thacker Decl. ¶ 22 Ex S), (Thacker Decl. ¶ 23 Ex T), (Thacker Decl. ¶ 24 Ex U), (Thacker Decl. ¶ 25 Ex V), (Thacker Decl. ¶ 26 Ex W), (Thacker Decl. ¶ 27 Ex X), (Thacker Decl. ¶ 28 Ex Y), (Thacker Decl. ¶ 29 Ex Z), (Thacker Decl. ¶ 30 Ex AA).

After the bankruptcy discharge, and after 2016, Bayview continued to issue correspondence to Plaintiff inviting him to apply for alternatives to foreclosure. Plaintiff relented and submitted personal and financial information to Bayview to be considered for loan modification. Plaintiff was denied twice by Bayview in 2016 and 2017.

In August of 2017, Bayview offered Plaintiff a "Balloon Amortization Trial Document – see balloon addendum" and required Plaintiff to make three trial payments in the amount of $1,733.87 for the months of September, October and November of 2017 (Thacker Decl. ¶31 and 32, Ex BB). After these three payments, in November of 2017, Bayview offered Plaintiff a "Loan Adjustment Agreement," which capitalized the arrears in the amount of $353,060.43. Plaintiff refused to sign such agreement believing that it was improper for Bayview to demand payment on the loan amount that was discharged in bankruptcy (Thacker, Decl., ¶ 33, Ex CC).

Bayview participated in FFA mediation with Plaintiff. The mediator concluded that "…while the Beneficiary met the technical standards of the [Washington Foreclosure Fairness Act] with regard to mediating in good faith, the experience did not support a good faith finding on behalf of the Beneficiary in spirit." (Thacker, Decl., ¶ 34, Exhibit DD).

## LEGAL AUTHORITY & ANALYSIS

Summary judgment is appropriate only where the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The summary judgment inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only in the latter case may the court grant summary judgment, but a jury must resolve the dispute if the evidence permits either of two reasonable conclusions. *Id.* at 250-5. It is not the role of the district court to "weigh the evidence and determine the truth of the matter" but instead to determine whether there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party." *Anderson,* 477 U.S. at 250. More importantly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. "It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial*." First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288-289 (1968).

Material facts are those necessary to the proof or defense of a claim and are determined by referring to substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court's consideration upon a motion for summary judgment must be based on the principle that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The defendants assert that Plaintiff cannot prevail as a matter of law on his claim for quiet title because of three factors: (1) he made payments before the order of bankruptcy discharge on November 12, 2010; (2) he acknowledged the Loan via communication with defendants, and (3) he made three trial payments in 2017 pursuant to an offer made by defendant Bayview (Motion for Summary Judgment, pp. 2-5). Plaintiff addresses these contentions in the same order of presentation as the defendants' motion.

**A.   DEFENDANTS DID NOT ADDRESS THE FACT THAT THE BANKRUPTCY COURT'S DISCHARGE OF PLAINTIFF'S PERSONAL LAIBILITY TRIGGERED THE STATUTE OF LIMITATIONS**

While the defendants stated that they do not address the issue of whether the discharge of Plaintiff's Chapter 7 bankruptcy started the statute limitations period of RCW 4.16.005, (Motion for Summary Judgment, 5:23-26), "bankruptcy operates as the acceleration of the principal amount of all claims against the debtor." *In re Tonyan Construction Company, Inc.,* 28 B.R. 714, 727 (Bankr. N.D. Ill. 1983); *In re Princess Baking Corporation,* 5 B.R. 587, 590 (Bankr. S.D. Ca. 1980); *In re Johns-Manville Corp.,* 36 B.R. 727, 740 (Bankr. S.D.N.Y. 1984); *Guarantee Trust Co. of New York v. Henwood*, 86 F.2d 347, 351 (8th Cir. 1936). Plaintiff contends that the loan was accelerated by Countrywide in November of 2008. Regardless, it cannot be disputed that the bankruptcy discharge entered November 12, 2010 accelerated the debt because Plaintiff and his former spouse never reaffirmed their personal liability for the

debt. Significantly, the defendants never objected to discharge to the 2010 bankruptcy filing. *Edmundson v. Bank of America,* 194 Wn. App. 920, 931, 378 P.3d 272 (2016); *Silvers v. U.S. Bank Nat. Ass'n,* 2015 U.S. Dist. LEXIS 112650, 2015 WL 5024173, at *4 (W.D. Wash. Aug. 25, 2015); *Bank of N.Y. Mellon v. Smith*, 2018 U.S. Dist. LEXIS 178810; *and Jarvis v. Fannie Mae*, 726 Fed. Appx. 666, 2018 U.S. App. LEXIS 15996, 2018 WL 2979017.

**B.   DEFENDANTS COMMUNICATED WITH PLAINTIFF POST DISCHARGE AND DEMANDED PAYMENT ON THE ENTIRE DEBT**

It is undisputed that the defendants communicated with Plaintiff post-discharge and demanded payments on the entire debt. Each post-discharge Periodic Statement sent by Bayview details as owing the original principal amount and the number of days of delinquency (Thacker Decl. ¶ 15 Ex L), (Thacker Decl. ¶16 Ex M), (Thacker Decl. ¶17 Ex N), (Thacker Decl. ¶ 18 Ex O), (Thacker Decl. ¶ 19 Ex P), (Thacker Decl. ¶ 20 Ex Q), (Thacker Decl. ¶ 21 Ex R), (Thacker Decl. ¶ 22 Ex S), (Thacker Decl. ¶ 23 Ex T), (Thacker Decl. ¶ 24 Ex U), (Thacker Decl. ¶ 25 Ex V), (Thacker Decl. ¶ 26 Ex W), (Thacker Decl. ¶ 27 Ex X), (Thacker Decl. ¶ 28 Ex Y), (Thacker Decl. ¶ 29 Ex Z), (Thacker Decl. ¶ 30 Ex AA)). Additionally, the numerous Notices of Trustee Sale, including the one recorded on or about March 21, 2018 in Pierce County Auditor's office under recording number 201803210248 (Complaint Dkt 1 Exhibit G), all demand all unpaid principal, charges, fees, and interest for over one hundred installments, from the original date of default .[1] Additionally, in August of 2017, Bayview issued a Loan Adjustment Agreement/Balloon Amortization Trial Document, confirmed that acceleration had occurred and had not been rescinded, or suspended:

> Servicer agrees to suspend foreclosure confirmation proceedings as long as you comply with the terms of this Stipulation Agreement. There is no grace period for these payments. Should at any time you fail to comply with the payment schedule set forth above, Servicer, will resume foreclosure proceedings from the point of suspension with no additional notice. ***This Stipulation Agreement shall not serve to waive, modify or alter in any way Servicer's, rights in law and equity to enforce the terms and conditions of the loan documents, or any other agreement relating to the referenced loan, except as provided herein***."

---

[1] The NOTS filed 3/31/2010 prior to the Ch 7 bankruptcy indicates a prepetition arrears of at least $65,322.23 based on a default date of 9/1/2008. This was the 10/01/2008 installment with interest from 9/1/2008 through 9/30/2008.

RESPONSE/OBJECTION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT 3:CV-
05562-RJB

5

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

(Thacker Decl. ¶ 31and ¶32 Ex CC, ¶33 Ex DD).

Bayview sent Plaintiff a letter dated October 14, 2015 threatening that foreclosure would occur if Plaintiff did not cure the default or "enter into a foreclosure alternative program within fourteen days." (Thacker Decl. ¶ 7 Ex F). These debt collection communications logically and naturally induced Plaintiff to participate in the lengthy and costly, but entirely frustrating post-discharge loan modification process, including two separate denials by Bayview and mediation under the Washington Foreclosure Fairness Act where the mediator essentially deemed Bayview as having acted in bad faith. At no time did the defendants inform the Plaintiff that the loan modification process would revive his discharged personal liability. Instead, the defendants baited Plaintiff into thinking that he could keep his home in order to extract more payments out of him in the name of trial payments and other devices, despite the bankruptcy discharge order.

Because the defendants initiated the post-discharge contact with Plaintiff to induce him into applying for loan restructuring, it cannot be said that Plaintiff's good faith cooperation constituted a knowing and voluntary agreement to repay a discharged debt. Bayview threatened to foreclose if Plaintiff did not explore and participate in an alternative program. Bayview invited Plaintiff to complete and sign standardized forms and submit his financials under penalty of perjury to participate in such alternative program. Bayview set forth deadlines for Plaintiff to return the completed forms and to submit substantial personal and financial information for Bayview's consideration, and the decision whether to grant loan modification rested solely with Bayview. In the final analysis, Bayview denied Plaintiff of any good faith option to avoid foreclosure. Therefore, it is fair to infer from these facts that loan modification or loan restructuring was simply a pretext through which Bayview extracted more money out of Plaintiff post-bankruptcy and billed more for services to its master, defendant Bank of New York Mellon.

Plaintiff requests the Court take judicial notice of *Hardyal v. U. S. Bank, N.A.*, C17-01416-TSZ, Western District of Washington, Seattle, in which the court considered the conduct of the servicer in its totality in determining whether acceleration had taken place (Barraza Declaration Ex A). At the oral argument of July 20. 2018, the court made an express finding that a forbearance agreement does not constitute a waiver or rescission of acceleration. In this case, each time that the defendants issued a document to Plaintiff concerning alternatives to foreclosure, they reiterated clearly that the Loan had been acceleration, that foreclosure was imminent and that no event within the loan modification process could lessen the impact of

imminent foreclosure. It is undisputed that the defendants' documents issued to Plaintiff, post discharge, failed to discuss the bankruptcy's effect on acceleration. Further, these documents failed to mention or discuss that the discharge injunction lacked validity or was waived by the Plaintiff.

The cases cited by the defendants under paragraph B of the Motion for Summary Judgment are distinguishable because **none of them involves a bankruptcy discharge and none involves the creditor seeking to foreclose upon the collateral after the statutory limitations period.** In *Silvers v. U. S., Bank,* 2015 U.S. Dist. LEXIS 112650, 2015 WL 5024173 (W.D. Wash., Aug. 25, 2015), this Court reminds that where the personal obligation of the note is discharged in bankruptcy, the lien of a deed of trust, which is not avoided or eliminated in the bankruptcy case, must be foreclosed within the statutory period of six years from the last time any payment on the Note was due. In a case involving a bankruptcy filing, the last payment due is the one due immediately prior to the date of discharge. *Id.* at *10. In *Silvers,* this Court determined that the debtors missed their January 1. 2010 payment and received their discharge on January 25, 2010. Thus, the Court concluded that the statute of limitations to enforce the deed of trust began to run on January 1, 2010. *Id.* at *10. Applying *Silvers* to this case, the last payment due was November 1, 2010 payment, and admitted further that on November 12, 2010, the bankruptcy court entered the order of discharge on his Chapter 7 bankruptcy case, the statute of limitations started to run on November 1, 2010 when that last payment was due but not paid, and the defendants had until November 1, 2016, to foreclose on Plaintiff's home.

### C. THE 2017 PAYMENTS MADE BY PLAINTIFF IN 2017 DO NOT CONSTITUTE A VALID REAFFIRMATION OF THE DISCHARGED DEBT

While the defendants claim that Plaintiff revived the debt by making three trial payments in 2017 under the Loan Adjustment Agreement, the payments have to be viewed in the context of the scenario the bankruptcy courts encounter regularly; discharged debtors often desire to obtain additional credit or continue to own property securing a discharged debt and, knowing this, creditors would engage in improper methods to secure "reaffirmations." *In re Close*, 2003 Bankr. LEXIS 1507 (E.D. Penn. Oct. 29, 2003). While the Bankruptcy Code preserves a debtor's right to voluntarily pay a discharged debt, 11 U.S.C.S. § 524(f), Congress enacted §524 (c) and (d), which provide that an agreement to pay a discharged debt is enforceable only (1) "to any

RESPONSE/OBJECTION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT 3:CV-05562-RJB

7

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

extent enforceable under nonbankruptcy law" (the "Nonbankruptcy Requirement") and (2) provided it meets specifically enumerated Bankruptcy Code reaffirmation requirements (the "Reaffirmation Requirements"). *In re Bennett*, 298 F.3d 1059, 1066 (9th Cir. 2002). Under the Code, 11 U.S.C.S. § 524(c) and (d) provide specific prerequisites to enforceability of an agreement to repay a discharged debt. These cases made clear that **state law no longer exclusively governs agreements to revive discharged debts**. Instead, as provided under § 524(c), a reaffirmation agreement is enforceable: (1) only to any extent enforceable under applicable nonbankruptcy law; and (2) provided it meets the specific requirements of § 524(c). 11 U.S.C.S. § 524(c).

In *Bennett*, the Ninth Circuit held that "If the agreement does not meet both conditions found in § 524(c), under § 524(a)(2), a discharge of the debt operates as an injunction against commencement of an action to collect on the debt as personal liability of the debtor." *Id.* at 1066, citing to 11 U.S.C.S. § 524(a)(2). It is undisputed that the unsigned Bayview's Loan Adjustment Agreement dated November 10, 2017, compels the Plaintiff to pay the exact debt that was discharged in bankruptcy without the defendants having to comply with the Nonbankruptcy Requirement and the Reaffirmation Requirements. The Adjustment Agreement refers to "the original principal sum of $432,000.00 [which] shall be increased by $351,060.43 the amount of unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances or unpaid property taxes and/or insurance premiums . . . for a total unpaid principal due of $785,060.43 ('New Balance')." The Loan Adjustment Agreement therefore is an attempted reaffirmation that fails short of the requirements for a valid reaffirmation under section 524(c)[2], and as such it is invalid under section 524(a) of the Bankruptcy Code.

---

[2] 524 (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if--
(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title [11 USCS § 727, 1141, 1228, or 1328];
(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

While Plaintiff did make three trial payments pursuant to the offer extended by the defendants which occurred post discharge, he cannot, by making such payments, acknowledge the debt because the Bankruptcy Code prohibits a debtor from waiving the discharge unless it is done property. Section 524 of the Bankruptcy Code, 11 U.S.C. 524, provides in pertinent part:

> (a) A discharge in a case under this title—
> * * * * *
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

In this case, there is no evidence that the Plaintiff waived the discharged debt. *In re Eliscu,* 163 B.R. 335 (N.D. Ill., Feb. 1, 1994) (Three requirements must be met in order for a court to decide that the waiver of discharge is effective under the Bankruptcy Code; it must be: (1) in writing, (2) signed by the debtor after the order for relief (post-petition), and (3) approved by the court);  *In re Cole*, 226 B.R. 647 (9th Cir. 1998) (Prospective waiver of discharge was void against public policy and unenforceable); *In re Mi Jung Hong*, 2014 Bankr. LEXIS 485 (C.D. Cal. Feb. 5, 2014) (Bankruptcy court did not have the equitable power to revoke a discharge outside the framework of 11 U.S.C §727(d)).

Defendants' characterization of Plaintiff's three trial payments made in 2017 as proof of an acknowledgment of the debt or a promise to repay the same does not help their argument because post-discharge mortgage modifications are in fact agreements and must comply with §524(j) "the ride through option" with respect to mortgage liens on real property. Section 524(j) provides that despite the discharge injunction, a mortgagee with a lien on a debtor's principal residence is permitted to send statements to a debtor in the ordinary course of business, instead of seeking *in rem* relief, permitting the debtor to pay the secured debt and keep the property. *Lemieux v. Am.'s Servicing Co. (In re Lemieux),* 520 B.R. 361, 369 (Bankr. D. Mass. 2014)

---

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--
(A) such agreement represents a fully informed and voluntary agreement by the debtor;
(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
(C) the attorney fully advised the debtor of the legal effect and consequences of--
(i) an agreement of the kind specified in this subsection; and
(ii) any default under such an agreement;

("Reading § 524(j) through the prism of current events is consistent with its purpose, which is to permit certain post-discharge actions of a secured creditor, but only when the debtor remains in his or her home."); *In re Bell*, 2014 Bankr. LEXIS 4717, at *15, n. 5 (N.N.Y. Nov. 13, 2014*); In re Whitaker*, 2013 Bankr. LEXIS 2328, at *23 (E.D. Tenn., Jun. 7, 2013). Here, the defendants are, under the guise of seeking *in rem* relief, sent statements demanding payment on the old debt as well as offered Plaintiff a loan modification to repay the original principal, the arrears and all fees and penalties.

*In re Eppolito*, 583 B.R. 822 (S.D.N.Y., Jan. 23, 2018), is instructive.  There, the debtor was granted a discharge of her personal liability on a note owned by Citimortgage. Four years after the discharge, she and the bank entered into an agreement for loan modification on the note that was discharged. The proposed loan modification would take a portion of the substantial arrearage and recapitalize it together with the unpaid principal balance. The bank also required the debtor to execute a subordination of mortgage in favor of HUD for an amount representing 30% of the unpaid principal of the discharged loan. The debtor thereafter filed a motion to reopen her bankruptcy to hold the bank in contempt, arguing that the proposed loan modification agreement is a veiled attempt to have the Debtor reaffirm a discharged debt and urged the court to direct the bank to honor and implement the proposed loan modification agreement without the subordinate note and mortgage requirement. The court explained its decision to hold the bank in contempt for violating the discharge injunction:

> By filing for chapter 7, the Debtor chose to liquidate her assets for the benefit of her creditors — including the Property encumbered by Citi's mortgage. Citi's sole remedy to collect on the note vis a vis the Debtor was and is to foreclose on the Property. Citi may not demand any payment or remuneration from the Debtor as to the note. Nonetheless, "a debtor may voluntarily pay any debt that has been discharged." The key language here is "voluntarily" and defining that word is at issue in this case. **To the extent the $102,551.13 subordinate note represents a portion of the discharged debt and as Citi had actual knowledge of the Debtor's bankruptcy case and discharge, Citi is in contempt of the discharge injunction for requiring a reaffirmation of a discharged debt and for attempting to offset the same as part of a post-discharge loan modification**. Just as Citi is unable to coerce the Debtor into reaffirming a discharged debt, the Court cannot coerce Citi to execute a loan modification consistent with the Debtor's desired terms.

*Id.* at 828, emphasis added.

Case 3:18-cv-05562-RJB   Document 23-1   Filed 03/05/19   Page 12 of 13

Here, the defendants' Loan Adjustment Agreement identifies the Promissory Note executed by Plaintiff on June 12, 2007 "in the original sum of $432,000.00." The Agreement states that "the unpaid principal balance due on the Note of $432,000.00, shall be increased by $353,060.43, the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums … for a total unpaid principal balance due of $785,060.43 ('New Principal Balance.'" Additionally, the Agreement specifies that "Servicer agrees to defer and waive interest upon $386,060.43 of the New Balance until the loan matures on 7/01/2037 at which time the Deferred Balance is not paid timely as agreed or in the event of a default under this agreement or the loan document, interest shall accrue on the Deferred Balance at the rate in effect on the loan immediately prior to maturity or the time of default and will adjust thereafter according to the terms of the Note." This language leaves no doubt in the mind of the reader that the defendants incorporated the entire discharge debt into the Agreement, added all interest, fees and costs and advances and made demand for the total amount to be paid by the Plaintiff or face foreclosure. Thus, the three trial payments made by the Plaintiff under this Modification were not made voluntary but were made under coercion for reaffirmation of a discharged debt.

In *Eppolito*, the loan modification agreement includes the following disclaimer:

> (a) Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement. I understand that I enter this Modification Agreement voluntarily and that this Modification Agreement, or actions taken by the Lender in relation to this Modification Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

*Id.* at 825.

By contrast, the defendants' Loan Adjustment Agreement is completely devoid of any reference to bankruptcy and relevant protection under the Bankruptcy Code, including the most important statement that defendants were not attempting to collect the debt as personal liability. *In re Culpepper*, 481 B.R. 650, 658 (D. Ore. 2012). Thus, it is undisputed that through coercive means, the defendants successfully extracted three trial payments from Plaintiff in violation of

RESPONSE/OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT 3:CV-05562-RJB

11

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax 206-933-7863

the bankruptcy discharge injunction. The evidence does not show that Plaintiff acknowledged the discharged debt after the statute of limitations had expired and promised to pay the defendants the New Principal Balance.

It is undisputed that Plaintiff's last payment before the discharge was due on November 1, 2010. Therefore, the defendants had until November 1, 2016 to foreclose on the collateral. The defendants calculated that the statute was tolled for 161 days during their serial foreclosures of the Plaintiff's property.[3] Adding 161 days to November 1, 2016 gets us to April 11, 2017. The defendant's latest NOTS recorded on March 21, 2018 is therefore beyond the statute of limitations and their claim for foreclosure is absolutely time-barred. *Bank of N.Y. Mellon v. Smith*, 2018 U.S. Dist. LEXIS 178810 (W.D. Wash., Oct. 17, 2018).

## CONCLUSION

Staying true to the principle enunciated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), this Court can clearly discern that the material facts in this case by applying substantive bankruptcy laws. The evidence submitted by the Plaintiff in opposition of summary judgement must be believed and all justifiable inferences therefrom to be drawn in Plaintiff's favor. *Anderson*, 477 U.S. at 255. The defendants' current attempt to foreclose upon Plaintiff's property is made outside the statute of limitations and Plaintiff has not voluntarily acknowledged the debt after his bankruptcy discharge, nor has he made any promise to repay the debt, including the discharged amount. As such, Plaintiff prays the Court to deny the defendants' motion for summary judgment.

DATED this 4th day of March 2019.

BARRAZA LAW, PLLC

/s/ Vicente Omar Barraza
VICENTE OMAR BARRAZA, WSBA 43589
Counsel for Plaintiff
14245-F Ambaum Blvd SW, Seattle WA 98166
206-933-7861 Fax 206-933-7863

---

[3] Plaintiff submits that any non-judicial foreclosures initiated by Recontrust Company, N.A. were invalid because Recontrust Company, N.A. acted *ultra vires* and operated unlawfully at all relevant times. See *State of Washington v. Recontrust Company, N.A.*, United States District Court, Western District of Washington, 2:cv-11-01460, Docket entry August 20, 2012, Consent Decree.