# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

DAVID BARTON THACKER, an unmarried man,

          Plaintiff,

v.

THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-24, MORTGAGE PASSTHROUGH CERTIFICATE, SERIES 2007-24 a national association, and BAYVIEW LOAN SERVICING, LLC,

CASE NO. 18-5562 RJB

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on the Defendants' Motion for Summary Judgment. Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

**A. FACTS**

On June 13, 2007 Plaintiff David Thacker and his then wife, Melody Thacker, borrowed $432,000 from SJ Lending, LP DBA Community One Financial, Ltd., to purchase a house at

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

4312 102nd Avenue East, Edgewood, WA. Dkt. 24-1, at 3-7. (Ms. Thacker and Mr. Thacker divorced on September 25, 2017 and Ms. Thacker signed a Quit Claim Deed conveying her interest in the property to Mr. Thacker on July 12, 2018. Dkts. 1-1, at 5-7 and 20-1, at 2. Mr. Thacker is the only Plaintiff in this case. Even where both the Thackers acted – signed a document, etc. this case will only refer to "Plaintiff.") The loan was secured by a Deed of Trust; the Mortgage Electronic Registrations Systems., Inc. ("MERS") was listed as beneficiary. Dkt. 24-1, at 9-24. In September 2008, the Plaintiff defaulted on the loan. Dkt. 1, at 3.

On October 17, 2008, the then loan servicer, Countrywide Home Loans Servicing, LP, sent the first of several "Notice of Intent to Accelerate" the subject loan. Dkt. 16, at 7. In this notice, Countrywide indicated that the Plaintiff missed the September, October and November 2008 payments, was in default in the amount of $6,557.90, and had until November 16, 2008 to cure the default. *Id.* The notice continued, "if the default is not cured on or before November 16, 2008, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." *Id.* The Plaintiff did not cure the default.

Non-judicial foreclosure proceedings began and on January 28, 2009, a Notice of Trustee's Sale was recorded in the Pierce County Auditor's Office. Dkt. 1-1, at 17-22. The sale did not occur.

On March 23, 2010, MERS assigned its beneficial interest in the Deed of Trust to Defendant The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-24 Mortgage Pass-Through Certificates, Series 2007-24 ("Bank"). Dkt. 17, at 24. A second Notice of Trustee's Sale was recorded, setting the sale date for July 2, 2010. Dkt. 1-1, at 23-28.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

On July 7, 2010, Plaintiff filed for debt relief under Chapter 7 of the U.S. Bankruptcy Code. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 10-45499-BDL; filed in this case at Dkt. 18, at 5-7. The loan was listed in the schedules. *Id.* To the extent the Plaintiff had personal liability on the note, the debt was discharged on November 12, 2010. *Id.*, filed in this case at Dkt. 18, at 10. The last missed loan payment before the discharge was November 1, 2010. *Id.*, filed in this case at Dkt. 1, at 4. Bankruptcy proceedings were closed on February 2, 2011. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 10-45499-BDL.

A third Notice of Trustee's Sale was recorded on May 25, 2011, with a sale date of August 26, 2011. Dkt. 24-1, at 71-76.

Ninety-two days later, on August 25, 2011, the Plaintiff filed for debt relief under Chapter 13 of the U.S. Bankruptcy Code. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 11-46776-PBS; filed in this case at Dkt. 18, at 15-23. The Plaintiff's Chapter 13 petition was dismissed for failure to file required schedules, statements or lists. *Id.,* filed in this case at Dkt. 18, at 25-27. On November 2, 2011, the Chapter 13 Trustee's Final Report and Account was filed and the case was closed. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 11-46776-PBS. This bankruptcy proceeding lasted 69 days.

By 2013, Defendant Bayview Loan Servicing, LLC ("Bayview") was servicing the loan. *See* Dkt. 24-1, at 33. On February 6, 2013, it sent a Notice of Default and Intent to Accelerate to the Plaintiff, notifying him that he was in default, and notifying him that if the default was not cured, the lender intended to foreclose on the property. *Id.*

On October 14, 2015, Bayview sent a letter to the Plaintiff, again notifying him that the loan was in default, and informing him the lender intended to foreclose on the property unless he either cured the default or entered a "foreclosure alternative program." Dkt. 24-1, at 38-40. As of October 14, 2015, the total delinquency was asserted to be $282,165.04. *Id.*

On September 8, 2016 and again on October 8, 2016, the Plaintiff applied for a loan modification by filling out forms entitled "Making Home Affordable Program Request for Mortgage Assistance." Dkt. 17, at 26-40. Each application included a "Hardship Affidavit," in which the Plaintiff "certified under the penalty of perjury" that he was "having difficulty making [the] monthly payment because of financial difficulties created by . . . household income [that] has been reduced." Dkt. 17, at 26 and 34. The applications were denied for failure to submit the required documentation. Dkt. 17, at 42-49.

The Plaintiff again applied for a loan modification on December 15, 2016, using the same form and repeating his prior certification in the "Hardship Affidavit." Dkt. 17, at 51-57. The application was again denied for failure to submit the required documentation. Dkt. 17, at 59-66.

The parties participated in three mediation sessions (in December 2016, January 2017 and the last one on April 24, 2017), regarding the Plaintiff's loan modification requests. Dkt. 16, at 58-61. According to the mediator, the Plaintiff engaged in a "frank and clarifying exchange of understanding" regarding the loan and modification requests at each mediation. *Id.* The parties agreed to a plan of action, to include another application for a loan modification. *Id.*

On June 22, 2017, the Plaintiff signed a "Notice of Representation and Authorization to Release Information," which indicated that he was represented by the law firm of Barraza Law, PLLC, and authorizing Defendant Bayview "to discuss and release to" Barraza Law, PLLC "all information regarding [the] above referenced loan," which is the loan that is the subject of this

case. Dkt. 17, at 73. He filled out a fourth application for loan modification, using the same form and same certifications. Dkt. 17, at 77. That same day, the Plaintiff sent a letter with his application which stated:

> We were seriously financially impacted in a negative way by the economic downturn of 2008. This and other factors related to our loan . . . caused us to be in this position with our mortgage.
> Now that we have recovered financially and find ourselves in a position to affirmatively engage in a new mortgage through this mediation process; we request that you give us strong consideration.

Dkt. 17, at 75.

In August of 2017, Bayview offered a trial loan modification conditioned on the Plaintiff making three provisional payments of $1,733.87. Dkt. 24-1, at 112-123. The Plaintiff complied, and on November 16, 2017, Bayview offered the Plaintiff a "Loan Adjustment Agreement," noting that the arrears amount was $353,060.43. Dkt. 24-1, at 125-137. The Plaintiff declined the offer, maintaining that the amount listed was higher than the value of the home, and so was discharged by the bankruptcy. Dkt. 20-1, at 7.

A fourth Notice of Trustee's Sale was recorded on March 21, 2018, setting the sale date for July 20, 2018. Dkt. 1-1, at 36-40. The sale did not occur.

**B. PROCEDURAL HISTORY**

On July 16, 2018, the Plaintiff filed this case, asserting that the applicable six year statute of limitations, under RCW 4.16.005 and 4.16.040 have lapsed, and so all attempts to collect the debt violates the: (1) Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692a (6) and (2) the Washington Consumer Protection Act, RCW 19.16.100 *et. seq.*, ("CPA"). Dkt. 1. The Plaintiff seeks to (1) quiet title, (2) receive injunctive relief barring the Defendants from selling the property at auction, and (3) to recover damages, attorneys' fees and costs. *Id.*

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

| | |
|---|---|
| 1 | **C. PENDING MOTION** |
| 2 | The Defendants now move for summary judgment arguing that the Plaintiff restarted the |
| 3 | statute of limitations when he acknowledged the loan, so the entire case should be dismissed. |
| 4 | Dkt. 15. The Plaintiff opposes the motion arguing that the statute of limitations has run. Dkt. 23- |
| 5 | 1. The Defendants replied to the response (Dkt. 25) and the matter is ripe for review. |
| 6 | **II.    DISCUSSION** |
| 7 | **A. SUMMARY JUDGMENT STANDARD** |
| 8 | Summary judgment is proper only if the pleadings, the discovery and disclosure materials |
| 9 | on file, and any affidavits show that there is no genuine issue as to any material fact and that the |
| 10 | movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is |
| 11 | entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient |
| 12 | showing on an essential element of a claim in the case on which the nonmoving party has the |
| 13 | burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue |
| 14 | of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find |
| 15 | for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 |
| 16 | (1986)(nonmoving party must present specific, significant probative evidence, not simply "some |
| 17 | metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a |
| 18 | material fact exists if there is sufficient evidence supporting the claimed factual dispute, |
| 19 | requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty* |
| 20 | *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors* |
| 21 | *Association*, 809 F.2d 626, 630 (9th Cir. 1987). |
| 22 | The determination of the existence of a material fact is often a close question. The court |
| 23 | must consider the substantive evidentiary burden that the nonmoving party must meet at trial – |
| 24 | |

e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. WASHINGTON LAW APPLIES

The Plaintiff claims that he is entitled to quiet title and to recover damages for violations of the FDCPA and CPA because the Defendants' attempts to foreclose on the property or otherwise exercise their rights under the note and deed of trust are, and have been, barred by the Washington statute of limitations. Dkt. 1.

In determining whether the Defendants are barred by the statute of limitations from exercising their rights under the contracts at issue (the note and deed of trust), Washington law applies. *See Hoang v. Bank of America, N.A.,* 910 F.3d 1096, 1101 (9th Cir. 2018)(applying Washington's six year statute of limitations to claims related to a note and deed of trust). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (*quoting Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996).

## C. WASHINGTON'S STATUTE OF LIMITATIONS

In Washington, a promissory note and a deed of trust are written contracts subject to the six-year statute of limitations under RCW 4.16.040 (1). *Cedar W. Owners Ass'n v. Nationstar Mortgage*, LLC, 434 P.3d 554, 559 (Wash. Ct. App. 2019).

> For a deed of trust, the six-year statute of limitations begins to run when the party is entitled to enforce the obligations of the note. This can occur either immediately for a demand note, when the note naturally matures, or when the party accelerates the note through breach or some other clause in the note.

*Washington Fed. v. Azure Chelan LLC*, 195 Wn. App. 644, 663 (2016). On installment promissory notes, like the one at issue here, the six-year statute of limitations "accrues for each monthly installment from the time it becomes due." *Cedar W.*, at 560. "A separate cause of action arises on each installment, and the statute of limitations runs separately against each...." *31 Richard A. Lord, Williston on Contracts § 79:17*, at 338 (4th ed. 2004); *see also 25 David K. Dewolf, Keller W. Allen & Darlene Barrier Caruso, Washington Practice: Contract Law and Practice § 16:20*, at 196 (2012–13 Supp.)("Where a contract calls for payment of an obligation by installments, the statute of limitations begins to run for each installment at the time such payment is due").

"[I]f the debt is accelerated and the entire debt becomes due, the statute of limitations begins to run from the date the amount is due, subject to any tolling." *See Umouyo v. Bank of Am., N.A.*, 2:16-CV-01576-RAJ, 2019 WL 359268, at *3 (W.D. Wash. Jan. 29, 2019). "Acceleration must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date. *Merceri v. Bank of New York Mellon,* 4 Wash.App.2d 755, (2018), *review denied, Merceri v. Bank of New York Mellon,* 192 Wash.2d. 1008 (2018).

This opinion will now turn to the two events that Plaintiff asserts operated to accelerate the debt: a 2008 Notice of Intent to Accelerate sent to the Plaintiff and the discharge of his Chapter 7 bankruptcy in November of 2010.

1. Notice of Intent to Accelerate

The Plaintiff argues that the debt was accelerated and the statute of limitations began to run when his then servicer, Countrywide, sent him the October 17, 2008 "Notice of Intent to Accelerate" the subject loan. Dkt. 23-1. This notice provided the amount that the Plaintiff was in default and set November 16, 2008 as a deadline for cure. Dkt. 16, at 7. It further provided that "if the default is not cured on or before November 16, 2008, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." Dkt. 16, at 7.

One month after the Plaintiff filed this case, the Washington State Court of Appeals decided *Merceri v. Bank of New York Mellon,* 4 Wash. App. 2d 755 (2018). The language in the October 2008 notice sent to the Plaintiff is nearly identical to the language of a "Notice of Intent to Accelerate" sent in *Merceri*. The *Merceri* court found that the language in the "Notice of Intent to Accelerate," without more, did not accelerate the debt. *Id.* It found that the defendants did not take a "clear and unequivocal action" apprising Merceri that the defendants exercised their right to accelerate the payment date. *Id.* The defendants there did not declare the entire debt due, did not refuse to accept installment payments, and the notice from the defendants showed the amount due on the installments, not for the full principal. *Id.*

As in *Merceri,* the 2008 "Notice of Intent to Accelerate" sent to the Plaintiff here did not operate to accelerate the date and so did not trigger the six-year statute of limitations. The language in the two notices are nearly identical. Moreover, the Defendants here did nothing

more than send the notice. They did not declare the entire debt due or refuse to accept installment payments. The notice showed the amount due on the installments $6,557.90, not the full principal amount. While other, later paperwork included the principal amount, it was not in the notice and all of the paperwork was equivocal, at best. The notice and other statements also threatened foreclosure, which did not occur either. This notice was not a "clear and unequivocal action" apprising the Plaintiff that the Defendants exercised their right to accelerate the debt.

### 2. Discharge of the Chapter 7 Bankruptcy

In the alternative, the Plaintiff maintains that because bankruptcy operates as the acceleration of the principal amount of all claims against the debtor, the November 12, 2010 discharge of his Chapter 7 bankruptcy operated as an acceleration of the debt. Dkt. 23-1. He contends that the last missed payment before the discharge, which was due on November 1, 2010, operated to accelerate the debt and so, the six year statute of limitations begins then. *Id.*

Under Washington law, "the statute of limitations accrued for each installment from the time it became due" until the Plaintiff "no longer had personal liability under the note." *Edmundson v. Bank of America,* 194 Wash.App. 920, 931 (2016). The Plaintiff remained personally liable on the Note (and successive payments continued to be due) until the Chapter 7 discharge on November 10, 2010. (The Chapter 7 discharge operated to eliminate the Plaintiff's personal liability on the note, but the deed of trust remained enforceable *in rem. See Johnson v. Home State Bank,* 501 U.S. 78 (1991)). The "statute of limitations on the right to enforce the Deed of Trust began running the last time any payment on the Note was due," here on November 1, 2010. *See Silvers v. U.S. Bank Nat. Ass'n,* 15-5480 RJB, 2015 WL 5024173, *4 (W.D. Wash. Aug. 25, 2015). So, unless the statute of limitations should be tolled or the Plaintiff acknowledges the debt, the statute ran on November 1, 2016. The Defendants contend that both occurred here.

3. <u>Tolling</u>

Under Washington law, "[t]he commencement of a nonjudicial foreclosure proceeding tolls the six-year statute of limitations period." *Cedar W.,* at 562. A Notice of Trustee's Sale begins the nonjudicial foreclosure proceedings such that the six-year statute of limitations is tolled. *Id.*

A Notice of Trustee's Sale was recorded on May 25, 2011 (with a sale date of August 26, 2011) which continued until the Plaintiff filed his Chapter 13 bankruptcy petition. This accounted for 92 days.

Bankruptcy petitions also operate to stay proceedings and, in Washington, toll the statute of limitations. 11 U.S.C. § 362(a)(3) and *Merceri,* at 154.

The Plaintiff's Chapter 13 proceeding began on August 25, 2011 and was dismissed on November 2, 2011. This proceeding lasted 69 days.

Between the non-judicial foreclosure and bankruptcy proceedings, the statute of limitation was tolled for at least 161 days. Due to this tolling, the statute of limitations was extended to April 11, 2017.

The Defendants assert that, the statute of limitations was restarted because the Plaintiff acknowledged his debt several times to the Defendants before April 11, 2017.

4. <u>Acknowledgement of the Debt Restarts the Statute of Limitations</u>

In Washington, an action barred by the six year statute of limitations applicable to contracts can be pursued where there is a "written acknowledgment or promise signed by the debtor that recognizes the debt's existence, is communicated to the creditor, and does not indicate an intent not to pay. *In re Tragopan Properties, LLC*, 164 Wn. App. 268, 273 (2011). Where "the debt is acknowledged before the statutory period, the resulting legal action must be upon the original debt or upon the paper evidencing it." *Id.* "Under those circumstances, any

acknowledgment of the debt should necessarily infer an agreement to pay it, unless something in the acknowledgment leads to a contrary conclusion. *Id.* "Where a debt is acknowledged after the statute of limitations has run, the action must be upon the new agreement and, in the nature of an original obligation, should be strictly construed." *Id.*

All three elements of acknowledgement of the debt before the statute of limitations had run are met here. Before the statute of limitations had run on April 11, 2017, on September 8, 2016, October 8, 2016, and on December 15, 2016, the Plaintiff applied for a loan modification by filling out forms, wherein the Plaintiff "certified under the penalty of perjury" to the Defendants that he was having difficulty making the mortgage's "monthly payment because of financial difficulties created by . . . household income has been reduced." He acknowledged, in writing, the existence of the debt to the Defendants, and by seeking a modification, evinced an intent to pay the debt. The application did not indicate an intent not to pay the obligation.

Further, all three elements of acknowledgement of the debt after the statute of limitations had run on April 11, 2017 are met here. On June 22, 2017, the Plaintiff signed a "Notice of Representation and Authorization to Release Information," which indicated that he was represented by the law firm of Barraza Law, PLLC, and authorizing Defendant Bayview "to discuss and release to" Barraza Law, PLLC "all information regarding [the] above referenced loan," which is the loan that is the subject of this case. There was no indication in this paperwork that the Plaintiff did not intend to pay the debt. Further, he filled out a fourth application for loan modification, using the same form and same certifications as before. The same day he submitted his fourth application for a loan modification, the Plaintiff sent a letter with his application which stated:

> We were seriously financially impacted in a negative way by the economic downturn of 2008. This and other factors related to our loan . . . caused us to be in this position with our mortgage.
> Now that we have recovered financially and find ourselves in a position to affirmatively engage in a new mortgage through this mediation process; we request that you give us strong consideration.

These documents were in writing, acknowledged the debt to the Defendants, and did not evince an intent not to pay the debt. The Plaintiff's acknowledgment of the debt restarted the statute of limitations.

Parties raise arguments that, in some ways, conflate the requirements for acknowledgment of a debt for the purposes of the Washington statute of limitations with reaffirmation of a discharged debt under bankruptcy law. The finding that the Plaintiff acknowledged the debt for purposes of the statute of limitations is not intended, in anyway, to constitute a finding that the Plaintiff has reaffirmed a discharged debt under bankruptcy law. The finding is merely related to the operation of Washington's statute of limitations. This opinion further makes no finding on the relief, if any, available to the Defendants on the contracts at issue.

**D. CONCLUSION**

The Plaintiff restarted the statute of limitations when he acknowledged the debt. The Defendants' motion for summary judgment (Dkt. 15) should be granted. The Plaintiff's claim for quiet title and claims for violations of the FDCPA and CPA, all of which are premised on the assertion that the statute of limitations has run, should be dismissed.

**ORDER**

Therefore, it is hereby **ORDERED** that:

- The Defendants' Motion for Summary Judgment (Dkt. 15) **IS GRANTED**; and
- This case **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 13th day of March, 2019.

ROBERT J. BRYAN
United States District Judge