# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| DAVID BARTON THACKER, an unmarried man,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-24, MORTGAGE PASSTHROUGH CERTIFICATE, SERIES 2007-24 a national association, and BAYVIEW LOAN SERVICING, LLC, | CASE NO. 18-5562 RJB<br><br>ORDER ON MOTION FOR ATTORNEYS' FEES |

This matter comes before the Court on the Defendants' Motion for Attorneys' Fees. Dkt. 31. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## I.     <u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

**A. FACTS**

The background facts are in the March 13, 2019 Order (Dkt. 26, at 1-5) and are repeated here for ease of reference.

ORDER ON MOTION FOR ATTORNEYS' FEES - 1

On June 13, 2007, Plaintiff David Thacker and his then wife, Melody Thacker, borrowed $432,000 from SJ Lending, LP DBA Community One Financial, Ltd., to purchase a house at 4312 102nd Avenue East, Edgewood, WA. Dkt. 24-1, at 3-7. (Ms. Thacker and Mr. Thacker divorced on September 25, 2017 and Ms. Thacker signed a Quit Claim Deed conveying her interest in the property to Mr. Thacker on July 12, 2018. Dkts. 1-1, at 5-7 and 20-1, at 2. Mr. Thacker is the only Plaintiff in this case. Even where both the Thackers acted – signed a document, etc. this case will only refer to "Plaintiff.") The loan was secured by a Deed of Trust; the Mortgage Electronic Registrations Systems., Inc. ("MERS") was listed as beneficiary. Dkt. 24-1, at 9-24. In September 2008, the Plaintiff defaulted on the loan. Dkt. 1, at 3.

On October 17, 2008, the then loan servicer, Countrywide Home Loans Servicing, LP, sent the first of several "Notice of Intent to Accelerate" the subject loan. Dkt. 16, at 7. In this notice, Countrywide indicated that the Plaintiff missed the September, October and November 2008 payments, was in default in the amount of $6,557.90, and had until November 16, 2008 to cure the default. *Id.* The notice continued, "if the default is not cured on or before November 16, 2008, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." *Id.* The Plaintiff did not cure the default.

Non-judicial foreclosure proceedings began and on January 28, 2009, a Notice of Trustee's Sale was recorded in the Pierce County Auditor's Office. Dkt. 1-1, at 17-22. The sale did not occur.

On March 23, 2010, MERS assigned its beneficial interest in the Deed of Trust to Defendant The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-24 Mortgage Pass-Through Certificates, Series 2007-24 ("Bank"). Dkt. 17, at 24. A second Notice of Trustee's Sale was recorded, setting the sale date for July 2, 2010. Dkt. 1-1, at 23-28.

On July 7, 2010, Plaintiff filed for debt relief under Chapter 7 of the U.S. Bankruptcy Code. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 10-45499-BDL; filed in this case at Dkt. 18, at 5-7. The loan was listed in the schedules. *Id.* To the extent the Plaintiff had personal liability on the note, the debt was discharged on November 12, 2010. *Id.*, filed in this case at Dkt. 18, at 10. The last missed loan payment before the discharge was November 1, 2010. *Id.*, filed in this case at Dkt. 1, at 4. Bankruptcy proceedings were closed on February 2, 2011. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 10-45499-BDL.

A third Notice of Trustee's Sale was recorded on May 25, 2011, with a sale date of August 26, 2011. Dkt. 24-1, at 71-76.

Ninety-two days later, on August 25, 2011, the Plaintiff filed for debt relief under Chapter 13 of the U.S. Bankruptcy Code. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 11-46776-PBS; filed in this case at Dkt. 18, at 15-23. The Plaintiff's Chapter 13 petition was dismissed for failure to file required schedules, statements or lists. *Id.,* filed in this case at Dkt. 18, at 25-27. On November 2, 2011, the Chapter 13 Trustee's Final Report

and Account was filed and the case was closed. *In re Thacker,* U.S. Bankruptcy Court for the Western District of Washington case number 11-46776-PBS. This bankruptcy proceeding lasted 69 days.

By 2013, Defendant Bayview Loan Servicing, LLC ("Bayview") was servicing the loan. *See* Dkt. 24-1, at 33. On February 6, 2013, it sent a Notice of Default and Intent to Accelerate to the Plaintiff, notifying him that he was in default, and notifying him that if the default was not cured, the lender intended to foreclose on the property. *Id.*

On October 14, 2015, Bayview sent a letter to the Plaintiff, again notifying him that the loan was in default, and informing him the lender intended to foreclose on the property unless he either cured the default or entered a "foreclosure alternative program." Dkt. 24-1, at 38-40. As of October 14, 2015, the total delinquency was asserted to be $282,165.04. *Id.*

On September 8, 2016 and again on October 8, 2016, the Plaintiff applied for a loan modification by filling out forms entitled "Making Home Affordable Program Request for Mortgage Assistance." Dkt. 17, at 26-40. Each application included a "Hardship Affidavit," in which the Plaintiff "certified under the penalty of perjury" that he was "having difficulty making [the] monthly payment because of financial difficulties created by . . . household income [that] has been reduced." Dkt. 17, at 26 and 34. The applications were denied for failure to submit the required documentation. Dkt. 17, at 42-49.

The Plaintiff again applied for a loan modification on December 15, 2016, using the same form and repeating his prior certification in the "Hardship Affidavit." Dkt. 17, at 51-57. The application was again denied for failure to submit the required documentation. Dkt. 17, at 59-66.

The parties participated in three mediation sessions (in December 2016, January 2017 and the last one on April 24, 2017), regarding the Plaintiff's loan modification requests. Dkt. 16, at 58-61. According to the mediator, the Plaintiff engaged in a "frank and clarifying exchange of understanding" regarding the loan and modification requests at each mediation. *Id.* The parties agreed to a plan of action, to include another application for a loan modification. *Id.*

On June 22, 2017, the Plaintiff signed a "Notice of Representation and Authorization to Release Information," which indicated that he was represented by the law firm of Barraza Law, PLLC, and authorizing Defendant Bayview "to discuss and release to" Barraza Law, PLLC "all information regarding [the] above referenced loan," which is the loan that is the subject of this case. Dkt. 17, at 73. He filled out a fourth application for loan modification, using the same form and same certifications. Dkt. 17, at 77. That same day, the Plaintiff sent a letter with his application which stated:

> We were seriously financially impacted in a negative way by the economic downturn of 2008. This and other factors related to our loan . . . caused us to be in this position with our mortgage.
> Now that we have recovered financially and find ourselves in a position to affirmatively engage in a new mortgage through this mediation process; we request that you give us strong consideration.

ORDER ON MOTION FOR ATTORNEYS' FEES - 3

Dkt. 17, at 75.

In August of 2017, Bayview offered a trial loan modification conditioned on the Plaintiff making three provisional payments of $1,733.87. Dkt. 24-1, at 112-123. The Plaintiff complied, and on November 16, 2017, Bayview offered the Plaintiff a "Loan Adjustment Agreement," noting that the arrears amount was $353,060.43. Dkt. 24-1, at 125-137. The Plaintiff declined the offer, maintaining that the amount listed was higher than the value of the home, and so was discharged by the bankruptcy. Dkt. 20-1, at 7.

A fourth Notice of Trustee's Sale was recorded on March 21, 2018, setting the sale date for July 20, 2018. Dkt. 1-1, at 36-40. The sale did not occur.

## B. PROCEDURAL HISTORY

On July 16, 2018, the Plaintiff filed this case, asserting that the applicable six year statute of limitations, under RCW 4.16.005 and 4.16.040 lapsed, and so all attempts to collect the debt violates the: (1) Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692a (6) and (2) the Washington Consumer Protection Act, RCW 19.16.100 *et. seq.*, ("CPA"). Dkt. 1. The Plaintiff seeks to: (1) quiet title, (2) receive injunctive relief barring the Defendants from selling the property at auction, and (3) to recover damages, attorneys' fees and costs. *Id.*

On March 13, 2019, the Defendants' motion for summary judgment was granted. Dkt. 26. The Plaintiff's claim for quiet title, and his claims for violations of the FECPA and the CPA, all of which were premised on the assertion that the statute of limitations to enforce the note and deed of trust had run, were dismissed because the Plaintiff restarted the statute of limitations when he acknowledged the loan. *Id.*

## C. PENDING MOTION

The Defendants now move for an award of $23,684.00 in attorneys' fees pursuant to provisions in the Deed of Trust and Promissory Note. Dkt. 31. The Plaintiff opposes the motion, arguing that: (1) an award of fees should not be made because it constitutes a post-petition claim that was discharged by the 2010 bankruptcy, or, in the alternative, (2) an award of

ORDER ON MOTION FOR ATTORNEYS' FEES - 4

fees should not yet be made because if the Defendants choose to foreclose on the property, they are "guaranteed the recovery of all interest, fees, costs, and whatever else they have incurred because the real property is available to satisfy such interest, fees and costs." Dkt. 33. The Defendants have replied (Dkt. 35) and the motion is ripe for decision.

## II. DISCUSSION

### A. AWARD OF FEES A POST-PETITION DISCHARGED CLAIM?

In the Ninth Circuit, "post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily pursued a whole new course of litigation, commenced litigation, or returned to the fray voluntarily." *In re Ybarra*, 424 F.3d 1018, 1024 (9th Cir. 2005)(*internal quotation marks and citation omitted*). While a debtor's bankruptcy protects a debtor "from the results of his past acts, including attorney's fees associated with those acts, it d[oes] not give him carte blanche to go out and commence new litigation about the contract without consequences." *Id.* "By voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation." *Id.*

The Plaintiff's bankruptcy did not discharge an award of attorneys' fees for this post-petition case. By opting to file this case, seeking an order quieting title in his name, and seeking an order barring the Defendants from selling the property at auction, the Plaintiff "commenced new litigation" and/or "returned to the fray voluntarily" and so is subject to personal liability for attorneys' fees and costs resulting from the litigation. The Plaintiff points to *In re Castellino Villas, A.K.F. LLC,* 836 F.3d 1028 (9th Cir. 2016) and argues that an award of fees would be improper. In that case, a <u>creditor</u> filed suit against a debtor in state court, the debtor then filed a bankruptcy petition, a bankruptcy plan was confirmed. Pursuant to the plan, the parties

continued to litigate in state court, and the creditor incurred attorneys' fees in the state court litigation. The creditor moved the bankruptcy court for a ruling that the state court had authority to award it attorneys' fees as the prevailing party. The bankruptcy court held that the attorneys' fees were discharged in the bankruptcy. In affirming the bankruptcy court, the Ninth Circuit held that, "[w]hen parties engage in prepetition litigation that could lead to an award of attorneys' fees, they may fairly contemplate that the prevailing party will be awarded those fees. Therefore, a creditor's contingent claim to such fees is discharged in bankruptcy, even if some fees are incurred post-petition." *In re Castellino Villas*, A. K. F. LLC, 836 F.3d 1028, 1035 (9th Cir. 2016). It further noted that, as was the case here, "when the prepetition litigation is resolved in bankruptcy so that any claim (including a contingent claim for attorneys' fees) against the debtor would be discharged, [the court] cannot say that the debtor's affirmative action to commence what amounts to a whole new course of litigation, was in the fair contemplation of the parties when the debtor filed a bankruptcy petition." *Id.,* at 1035-36 (*internal quotation marks and citations omitted*). "Rather, the debtor's decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition." *Id.*, at 1036.

Unlike *In re Castellino Villas,* in this case, the debtor, Plaintiff Thacker, commenced this litigation voluntarily, not the creditor. "Claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily "return[s] to the fray." *In re Ybarra*, at 1026. An award of attorneys' fees here does not constitute a post-petition claim that was discharged by the 2010 bankruptcy.

**B. TIMELINESS OF MOTION FOR AWARD OF ATTORNEYS' FEES**

Pursuant to Fed. R. Civ. P. 54 (d)(2), "Attorney's Fees,"

> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
> > (i) be filed no later than 14 days after the entry of judgment;
> > (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> > (iii) state the amount sought or provide a fair estimate of it; and
> > (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

The Defendants' should be awarded reasonable attorneys' fees. Their motion for attorneys' fees is timely under Rule 54 (d)(2)(B)(i). The judgment was entered on March 14, 2019, and their motion for an award of fees was filed on March 28, 2019. The Defendants' motion states that the award is sought pursuant to the Deed of Trust and the Note. (The Deed of Trust provides that "[l]ender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." Dkt. 32, at 18. The Note provides, "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note . . . Those expenses include, for example, reasonable attorneys' fees." Dkt. 32, at 24.) The Defendants have sufficiently specified the grounds entitling them to an award under Rule 54 (d)(2)(B)(ii). They have provided the amount sought, $23,684.00, meeting the requirements of under Rule 54 (d)(2)(B)(iii). There is no reason to inquire into the terms of any agreement about fees between the Defendants and their attorneys under Rule 54 (d)(2)(B)(i). While the Plaintiff expresses concern that the Defendants will attempt double recovery of these fees in a foreclosure proceeding, the Defendants specifically state that they cannot and will not request fees that were awarded in this case. Dkt. 35, at 2. The Defendants motion for an award of fees should be granted.

## C. REASONABLE ATTORNEYS' FEES STANDARD

In determining what attorney's fee is reasonable in a particular case, the court arrives at the "lodestar amount," that is, multiplying the number of hours reasonably expended by a reasonable hourly rate. *Jordan v. Multnomah County*, 799 F.2d 1262, 1265 (9th Cir. 1986) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "While in most cases the lodestar figure is presumptively reasonable, in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526, F.2d 67, 69–70 (9th Cir.1975), that have not been subsumed in the lodestar calculation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (*internal and quotations citations omitted*).

Under *Kerr,* the court considers the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976). These considerations are consistent with Washington Rules of Professional Conduct 1.5.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir. 1995)." *Id.* The party opposing the fee application has a burden of rebuttal

that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Id.*

**D. LODESTAR AMOUNT**

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County,* 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). In making its calculation, the Court should consider the experience, skill, and reputation of the attorneys requesting fees. *Schwarz v. Sec'y of Health & Human Serv.,* 73 F.3d 895, 906 (9th Cir. 1995). The Court is further allowed to rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjiam,* 647 F.3d 955, 928 (9th Cir. 2011).

The hourly rates requested by Plaintiff's attorneys are: $285 for Greg Hensrude and $250 for Erin Thenell and Stephanie Olson. Dkt. 283. (There is no information in the record regarding Ian Rambarran, and so it is unclear whether his rate of $285 per hour is reasonable. The time spent by Mr. Rambarran, 0.8 hours, should be discounted.)

Mr. Hensrude, who is a shareholder in his firm and has been in practice for over 16 years, claimed a rate of $285 per hour; that rate is reasonable for the community. Ms. Thenell and Ms. Olson, junior associates with two and three years' experience respectively, claimed a rate of $250 an hour. These rates are reasonable for the community and should be used to calculate fees. This opinion will now turn to the number of hours billed by the lawyers.

In the Ninth Circuit, "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to

a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). A district court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)(citing *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2008)).

The Defendants fail to clearly identify the total amount of hours each of the attorneys are claiming. The Court has been forced to comb through the record in an effort to add up each attorneys' claimed hours. Further, the last time record submitted includes 0.3 hours for Mr. Hensrude's work on the appeal filed by the Plaintiff with the Ninth Circuit Court of Appeals. Dkt. 32, at 43. These 0.3 hours should not be awarded to Mr. Hensrude; the Defendants state that they will be seeking an award of attorneys' fees for the appeal. Accordingly, it appears that the Defendants' seek an award for the following hours: Mr. Hensrude – 11.3 hours (11.6 less 0.3), Ms. Thenell – 44.2 hours, and Ms. Olson – 36.6 hours. Dkt. 32. Overall, the hours claimed are not "excessive, redundant, or otherwise unnecessary." *Gonzalez,* at 1203.

The lodestar figure, then, is calculated as follows:

| | | | | |
|---|---|---|---|---|
| 11.3 hours | x | $285 | = | $ 3,220.50 |
| 44.2 hours | x | $250 | = | $11,050.00 |
| 36.6 hours | x | $250 | = | $ 9,150.00 |
| Attorneys' Fees Lodestar | | | | $23,420.50 |

The Court notes that this varies from the amount identified in the Defendants' motion, $23,684.00, by $263.50, an amount that cannot be fully accounted for with the discount of 0.3 hours for Mr. Hensrude's time on the appeal and Mr. Rambarran's time. Based on a review of the time records submitted, however, $23,420.50 is a reasonable award of attorneys' fees in this case.

ORDER ON MOTION FOR ATTORNEYS' FEES - 10

After making the lodestar computation, the court must assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the factors announced in *Kerr*. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). "Only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees." *Id*.

E.  ***KERR FACTORS***

Each of the *Kerr* factors will be addressed below.

1. <u>The Time and Labor Required</u>.  The Court has commented on the time and labor required in determining reasonable hours.

2. <u>Novelty and Difficulty of Questions</u>.  The questions in the case were not particularly difficult.  The law is not complex.  These factors do not favor a reduction or addition to the lodestar amount.

3. <u>Requisite Skill and Preclusion of Other Employment</u>.  This case did not require exceptional skill to perform the legal service properly, and the lawyers did not show that it precluded other employment by these attorneys more than any other case would.  The skill required is recognized in the hourly rate allowed.

4. <u>Customary Fee, Whether the Fee is Fixed or Contingent, Time Limits</u>.  The customary fee in mortgage cases is basically the lodestar amount.  Enhancements are not customary.  The fixed nature of the fees is considered in the hourly rates allowed.  There is no evidence that any unusual time limits were placed on counsel, either by the client or by the circumstances.

5. <u>Amount Involved and Results Obtained</u>.  The amount involved and the results obtained do not warrant an adjustment in the lodestar amount.

6. <u>Experience, Reputation and Ability of Attorneys, Undesirability of Case and Relationship with Client</u>.  The consideration of the experience, reputation and ability of these attorneys is addressed above in the lodestar and no further consideration is required.  The desirability or undesirability of the case does not provide a basis to increase or reduce fees here, nor does the nature and length of the professional relationship with the client favor an enhancement or reduction of the lodestar.

7. <u>Awards in Similar Cases</u>.  No evidence has been submitted of awards of this nature in similar cases, and so no departure from the lodestar calculation is warranted.

**ORDER**

Therefore, it is hereby **ORDERED** that:

- The Defendants' Motion for Attorneys' Fees (Dkt. 31) **IS GRANTED**; and
- This Defendants are awarded **$23,420.50** in attorneys' fees.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 22nd day of April, 2019.

*(signature)*

ROBERT J. BRYAN
United States District Judge